IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

**ENTERED**

**MAR 1 4** 2002

SAMUEL L. KAY, CLERK

STATE OF WEST VIRGINIA *ex rel.*
DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,

     Plaintiff,

v.                                          CIVIL ACTION NO. 1:01-0557

PURDUE PHARMA L.P., et al.,

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Before the court is plaintiff's motion to remand.  For the reasons more fully set forth below, that motion is GRANTED.

I.  Background

This case was originally filed in the Circuit Court of McDowell County, West Virginia, and was removed to this court by defendants on the basis of federal question jurisdiction. Plaintiff's complaint alleges that OxyContin® is an addictive and dangerous drug which defendants aggressively promoted and marketed to physicians, pharmacists, and patients, all the while misrepresenting the appropriate uses of the drug and failing to adequately disclose and discuss the safety issues and possible adverse effects.  Plaintiff alleges that inappropriate prescriptions of the drug have led to a soaring increase in the use of OxyContin in West Virginia, costing the State and its agencies, citizens and consumers large amounts of money. Plaintiff seeks relief under the West Virginia Consumer Credit

Protection Act, W. Va. Code §§ 46A-6-101, et seq., and also sues under theories of public nuisance, unjust enrichment, indemnity, negligence, medical monitoring, and antitrust.

On June 21, 2001, defendants, who include Purdue Pharma L.P., Purdue Pharma Inc., Purdue Frederick Company ("Purdue defendants"), Abbott Laboratories, and Abbott Laboratories, Inc. ("Abbott defendants"), removed this case from the Circuit Court of McDowell County, West Virginia, contending that plaintiff had raised a federal question, thus providing this court with jurisdiction over this action pursuant to 28 U.S.C. § 1331. Purdue and Abbott manufacture and sell OxyContin.  Defendants assert that every aspect of the manufacture, promotion, and distribution of OxyContin is subject to comprehensive federal regulation.  Defendants argue that the drug is regulated under both the Controlled Substances Act, 21 U.S.C. §§ 801, et seq., and the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 321, et seq., as well as certain regulations under both statutes. They urge that plaintiff's claims seek to challenge this federal regulatory scheme, through the relief sought and by requiring interpretation of the federal regulations.

## II.  Analysis

### A.  Removal Jurisdiction

The court begins by noting that the burden of establishing the propriety of removal is upon defendants in this case, the

parties seeking removal.  See Mulcahey v. Columbia Organic

Chemical Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).  Further,

doubts about the propriety of removal are to be resolved in favor

of retained state court jurisdiction.  See Able v. Upjohn Co.,

Inc., 829 F.2d 1330, 1332 (4th Cir. 1987).

A defendant may remove any civil action, brought in a state

court, "of which the district courts of the United States have

original jurisdiction."  28 U.S.C. § 1441(a).  Federal courts

"have original jurisdiction of all civil actions arising under

the Constitution, laws, or treaties of the United States."  28

U.S.C. § 1331.  A case arises under federal law if federal law

creates the cause of action.  See Franchise Tax Bd. v. Constr.

Laborers Vacation Trust, 463 U.S. 1, 8-9 (1983).

As this court has previously noted, "[i]t is a familiar

proposition that a plaintiff is `master of his own action' and,

as such, is free to choose the legal theory upon which his case

will proceed."  Bailey v. Norfolk & Western Railway Co., 842 F.

Supp. 218, 220 (S.D.W. Va. 1994) (citing The Fair v. Kohler Dye &

Specialty Co., 228 U.S. 22, 25 (1913)).  Therefore, for purposes

of determining the existence of federal subject matter

jurisdiction and whether removal is appropriate, the complaint

and its allegations are typically the controlling factors.  See

id.; see also Louisville & Nashville R.R. v. Mottley, 211 U.S.

149 (1908) (explaining the contours of the well-pleaded complaint

rule).  Federal courts have removal jurisdiction only when "a

3

right or immunity created by the Constitution or laws of the
United States [is] an element, and an essential one, of the
plaintiff's cause of action." Gully v. First Nat'l Bank, 299
U.S. 109, 112 (1936).  Removal is not proper if based on a
defense or an anticipated defense which is federal in nature,
even if both parties admit that the federal defense is the only
real question in the case.  See Caterpillar Inc. v. Williams, 482
U.S. 386, 393 (1987).

The well-pleaded complaint rule, however, is not without
exceptions.  The artful pleading doctrine, one corollary to the
well-pleaded complaint rule, prevents a plaintiff from
frustrating a defendant's right of removal by carefully pleading
his claims without any reference to federal law.  See 14B
Charles A. Wright, et al., Federal Practice and Procedure § 3722
(3d ed. 1999).  If a plaintiff has artfully pled claims, a court
may uphold removal even though no federal claims appear on the
face of the complaint.  Two main types of artful pleading involve
state claims that are completely preempted by federal law or that
necessarily involve a substantial question of federal law.  See
id.  Defendants argue that plaintiff's claims involve both types
of artful pleading.  The court will consider these in conjunction
with defendants' assertions.

B.  Preemption

There are different types of federal preemption of state law
relevant to the analysis in the instant case, but only one of
which provides removal jurisdiction.  Field preemption occurs

4

when Congress impliedly preempts state law by occupying an entire field of regulation.  See McCallister v. Purdue Pharma L.P., 2001 WL 1141329 *2-3 (S.D.W. Va. September 27, 2001)(Haden, C.J.). When federal law preempts state law to the extent that it actually conflicts with federal law so that either compliance with both is impossible or state law stands as an impediment to a federal purpose, it is called conflict preemption.  See id. (citing Abbot v. American Cyanamid Co., 844 F.2d 1108, 1111 (4th Cir. 1988)).  Field preemption and conflict preemption are defenses to state law claims, and as such, they do not appear on the face of a well-pleaded complaint, and do not authorize removal to federal court.  See id.

Under the complete preemption doctrine, when the class of claims submitted by the plaintiff is necessarily federal--even if the federal issue is raised as a defense and does not appear on the face of plaintiff's well-pleaded complaint-- removal is always permitted.  See Lyons v. Alaska Teamsters Employer Service Corp., 188 F.3d 1170, 1172 (9th Cir. 1999).  If "a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."  Franchise Tax Bd., 463 U.S. at 24.  The United States Court of Appeals for the Fourth Circuit has stated that "[i]n deciding whether the preemptive force of [an] Act is so extraordinary that a state-law claim . . . becomes federal in nature, the focus of our inquiry

must be congressional intent." <u>Rosciszewski v. Arete Assocs.,</u>
<u>Inc.</u>, 1 F.3d 225, 231 (4th Cir. 1993). Other circuits, such as
the Third, have established tests for complete preemption. That
Circuit has stated that complete preemption only exists if: (1)
"the statute relied upon by the defendant as preemptive contains
civil enforcement provisions within the scope of which the
plaintiff's state claim falls" and (2) there is "a clear
indication of a Congressional intention to permit removal despite
the plaintiff's exclusive reliance on state law." <u>Railway Labor</u>
<u>Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.</u>, 858 F.2d
936, 942 (3d Cir. 1988).

<u>1. Discussion</u>

Although plaintiff's complaint raises only state law claims,
defendants raise several arguments in favor of federal question
jurisdiction. Defendants first argue that plaintiff's complaint
seeks injunctive and/or equitable relief that would require
changes to the federally-approved and closely monitored labeling
and warnings accompanying OxyContin. Defendants argue that such
claims can be asserted only under federal law by seeking review
of the FDA and/or DEA's decisions. Defendants assert that any
change to the literature, labeling or other information
distributed requires approval of the FDA.

Part of the relief sought in the instant case includes the
creation of a court-administered fund, financed by defendants,

which would, among other things, "notify individuals who use or used OxyContin of the potential harm from [the drug]." Complaint, ¶¶ 54(H)(1), 81(G)(1), 86(A). The State also seeks injunctive relief "to stop defendants' promotion and marketing of OxyContin for inappropriate uses in West Virginia." Id. at ¶¶ 54(D), 62(D), 70(D), 76(D), 81(E). Plaintiff asserts that both forms of relief seek only to strengthen adherence to the current FDA-approved labeling of OxyContin, not to change such labeling. Plaintiff notes that it is not asking for a change in the labeling or for an injunction requiring new warnings or labeling. Plaintiff further disputes defendants' contention that the relief requested actually constitutes "labeling" under the FDCA, and argues that even if it does, this type of "promotional labeling" does not require FDA approval. See Plaintiff's Reply Brief, pp. 4-9, citing 21 C.F.R. §§ 314.70(c); 314.81(b)(3)(i).

The court feels that there has been some mischaracterization of plaintiff's claims. The claims in the instant case appear to be similar to those raised in another case recently decided by this court, McCallister v. Purdue Pharma L.P., 2001 WL 1141329 (S.D.W. Va. September 27, 2001)(Haden, C.J.). When defendants in that case made a similar argument regarding the requested injunctive relief, the court noted that the case centered not on inaccurate labeling of the product, but rather on the over-promotion and aggressive marketing strategies of defendants. See

McCallister at *3-4.  In the instant case, the court feels that
the following portion of plaintiff's complaint sets forth the
gravamen of this action:

> The enormous sales volume of OxyContin was due
> primarily to Defendants' aggressive marketing strategy
> to physicians, pharmacists and patients.  That
> strategy, however, which relied heavily on highly
> coercive tactics, misrepresented the appropriate uses
> of OxyContin and failed to adequately disclose and
> discuss the safety issues and possible adverse effects
> of OxyContin use.

Complaint, ¶ 23.

The court feels that this portion of the complaint exhibits
that plaintiff's claims are not exactly as defendants assert.
Regardless, and even assuming that a state court could not order
the relief sought by plaintiff without the approval of the FDA,
removal does not necessarily follow.  If the relief requested
would require approval of the FDA, defendants would have merely
established that the FDCA may provide a defense to plaintiff's
state law claims or remedies.  See Dawson v. Ciba-Geigy Corp.,
U.S.A., 145 F. Supp. 2d 565, 570 (D.N.J. 2001).  As previously
noted, "removal is not proper if based on a defense or an
anticipated defense which is federal in nature, even if both
parties admit that the federal defense is the only real question
in the case."  Id. (citing Caterpillar Inc. v. Williams, 482 U.S.
386, 393 (1987)).  Accordingly, defendants' arguments on this
point do not support removal.

8

Similarly, defendants' other arguments, especially those of
the Abbott defendants, asserting that there is federal
jurisdiction because all aspects of OxyContin manufacture and
distribution are federally controlled, and that plaintiff's
relief, if granted, would usurp the government's responsibility,
likewise do not support removal.  It appears that this argument
asserts field preemption, meaning that the government has so
entirely occupied the field of OxyContin regulation that any
claim concerning that regulation is necessarily federal.  See
McCallister, 2001 WL 1141329, at *4.  However, this argument,
even if correct, exhibits only defensive preemption, not complete
preemption necessary for removal jurisdiction.  See id.

Defendants also argue that the relief sought by plaintiff
(which defendants characterize as injunctive relief requiring the
modification of labeling for OxyContin) can only be achieved
through an action under Section 10 of the Administrative
Procedure Act ("APA") for judicial review of the FDA order
regarding the approval of OxyContin labeling, see 5 U.S.C. §§
702, 706, or by filing a "citizen's petition" with the FDA
pursuant to 21 C.F.R. § 10.30, seeking a change in OxyContin's
labeling.  The court has previously addressed concerns that
plaintiff's claims and requests for relief may not be exactly as
defendants characterize them.  In addressing defendants'
arguments on the APA and the citizen's petition, the court notes

9

its approval and agreement with the decision of the Northern
District of Alabama in <u>Brenizer v. Purdue Pharma, L.P., et al.</u>,
Civil Action No. CV-01-N-2334-W (slip op. December 21,
2001)(Nelson, J.), a copy of which has been placed on the left
side of the file in the instant case for reference.  In <u>Brenizer</u>,
the court dealt with many of the same arguments presented in the
instant case, and the court notes that the complaint in that case
contains almost identical factual allegations as the complaint in
the instant case.

The support for defendants' argument that plaintiff must
proceed under the APA or through a citizen's petition to the FDA
is found in <u>Kaucky v. Southwest Airlines Co.</u>, 109 F.3d 349 (7th
Cir. 1997), where Judge Posner stated that "[w]hen federal law
creates an exclusive remedy for some wrong, displacing any remedy
that the states may have created for it, a suit to redress that
wrong necessarily arises under federal law."  <u>Id.</u> at 351.  In
<u>Kaucky</u>, the plaintiff brought a claim in state court to recover
federal taxes from Southwest Airlines that he was allegedly
wrongfully required to pay as part of the ticket price.  <u>See</u> <u>id.</u>
at 350.  Although the claim proceeded and sought recovery under
state law, the court held that plaintiff was seeking to recover
federal taxes paid, a recovery provided for exclusively under
federal law.  <u>See</u> <u>id.</u> at 353.  As noted by the <u>Brenizer</u> court,

the application of this statement in the context of the instant

case is unclear.  See Brenizer slip op. at 12.

The court has already noted that the instant case appears to

center on allegations of negligence, misrepresentation and the

allegations that defendants aggressively over-promoted and

marketed OxyContin.  The suit does not allege fault with any

action of the FDA, as would invoke the application of the APA.

See Brenizer, slip op. at 13; Sciolino v. Marine Midland Bank-

Western, 463 F. Supp. 128, 130 (W.D.N.Y. 1979) ("The claim of

jurisdiction under 5 U.S.C. § 702 can be dismissed out of hand.

Such section applies only to a governmental agency's action and

the jurisdiction of district courts to review such action.

Nothing in the federal complaint speaks of agency action and no

review of any such action is sought.").  Further, the

availability of a remedy under the APA does not vindicate the

same interests as plaintiff seeks to vindicate here.  See Dawson,

145 F. Supp. 2d at 572.  In Dawson, plaintiffs brought a class

action lawsuit in state court on behalf of users of Ritalin,

against the manufacturer and others, alleging fraud,

misrepresentation, negligence, breach of warranties, and

violation of the New Jersey Consumer Fraud Act in the marketing

of the drug.  See id. at 567.  The case was removed to federal

court based on arguments similar to those defendants raise in the

instant case.  See id.  The defendants in Dawson argued that the

11

plaintiffs in that case could avail themselves of a remedy under the APA. See id. at 572. The district court found that plaintiffs were not faulting the FDA for any alleged wrongs in that case, but instead claimed that the defendant drug companies deceived consumers and purchasers of Ritalin about its negative and positive implications. See id. Thus, the court determined that a suit against the FDA would not vindicate the same interests plaintiffs sought to vindicate, and found no complete preemption. See Dawson, 145 F. Supp. 2d at 572. This court finds that the same analysis would apply to the instant case, where plaintiff asserts no fault as to the FDA.

Further, the court notes that plaintiff does not request that the Commissioner of the FDA take any particular action, invoking the citizen petition provisions of 21 C.F.R. § 10.30. See Brenizer, slip op. at 13. Plaintiff notes that although the citizen petition process might provide the State with a means of requesting that the FDA require a new warning in the FDA-approved labeling for OxyContin, defendants have cited to no provision in the FDCA or its regulations which would permit the FDA to require the drug companies to finance the distribution of the notification requested by plaintiff here.

12

2.  Complete Preemption Under the FDCA or Controlled Substances
Act

Defendants also argue that plaintiff's claim for equitable
relief is completely preempted by the federal regulatory
framework establishing the FDA's exclusive control over the
labeling of prescription drugs.  Either the FDCA or the
Controlled Substance Act "completely preempts plaintiff's state
claims only if it provides a private cause of action, which
Congress intended to vindicate the same interest [plaintiff]
seek[s] to vindicate in [this] state action."  McCallister v.
Purdue Pharma L.P., 2001 WL 1141329, *5 (S.D.W. Va. Sept. 27,
2001)(Haden, C.J.).[1]

It is well-established that the FDCA does not allow for or
create a private right of action for its enforcement.  See id.;
Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 814
(1986); In re Orthopedic Bone Screw Products Liability
Litigation, 193 F.3d 781, 788 (3d Cir. 1999); Mylan Labs., Inc.
v. Matkari, 7 F.3d 1130, 1139 (4th Cir. 1993).  Defendants
attempt to argue that the availability of a remedy under the APA
completely preempts a claim for equitable relief like that sought
by plaintiff, although recognizing the Dawson decision to the
contrary.  See Dawson v. Ciba-Geigy Corp., USA, 145 F. Supp. 2d
565, 572 (D.N.J. 2001).  Defendants attempt to find fault with

---

[1] See discussion supra p. 5-6.

13

the court's reasoning in Dawson; however, this court has previously addressed the Dawson court's holding and analogized it to the instant case.  See discussion supra p. 11.  Further, to the extent that defendants attempt to rely on Bernhardt v. Pfizer, Inc., 2000 WL 1738645 (S.D.N.Y. 2000), the court notes that the opinion in that case dealt not with complete preemption, but with the doctrine of primary jurisdiction, a separate issue. See Brenizer, slip op. at 17.[2]  Because there is no private right of action under the FDCA, the court finds no complete preemption of plaintiff's claims.  To the extent that defendants argue that there is complete preemption under the Controlled Substances Act, the court notes the decision in McCallister, finding that a careful review of this Act "establishes no Congressional intent to create a private, civil right of action nor to permit removal."  McCallister, 2001 WL 1141329, *5, and n.16. Accordingly, none of plaintiff's claims are completely preempted by federal law so as to create federal jurisdiction and permit removal.

C.  Substantial Question of Federal Law

Defendants also argue that plaintiff's claims raise a substantial question of law under both the FDCA and the Controlled Substances Act.  This is essentially the same argument raised by the defendants in the McCallister case.  See

---

[2] See discussion of primary jurisdiction infra p. 16-18 .

McCallister, 2001 WL 1141329 at *5-6.  This argument involves the
second type of artful pleading, which is also another exception
to the well-pleaded complaint rule.  The argument is based upon
the principle that federal question jurisdiction may exist if the
plaintiff's claims raise a substantial issue of federal law, even
if the plaintiff does not refer to federal law on the face of the
complaint.

In Franchise Tax Board, the Supreme Court stated that
federal question jurisdiction may be appropriate when "it appears
that some substantial, disputed question of federal law is a
necessary element of one of the well-pleaded state claims."
Franchise Tax Bd., 463 U.S. at 13.  However, in Merrell Dow, the
Court noted that the "actual holding in Franchise Tax Board
demonstrates that this statement must be read with caution[.]"
Merrell Dow, 478 U.S. at 809.  As the Merrell Court noted, "the
central issue presented in [Franchise] turned on the meaning of
[ERISA], but we nevertheless concluded that federal jurisdiction
was lacking."  Id.  The Court further explained:

> Given the significance of the assumed congressional
> determination to preclude federal private remedies, the
> presence of the federal issue as an element of the
> state tort is not the kind of adjudication for which
> jurisdiction would serve congressional purposes and the
> federal system . . . .  We simply conclude that the
> congressional determination that there should be no
> federal remedy for the violation of this federal
> statute is tantamount to a congressional conclusion
> that the presence of a claimed violation of the statute
> as an element of a state cause of action is

> insufficiently "substantial" to confer federal-question
> jurisdiction.

Merrell Dow, 478 U.S. at 814.  Thus, as this court determined in

McCallister v. Purdue Pharma L.P., "interpretive issues under the

FDCA and the Controlled Substances Act are insufficient to

provide removal jurisdiction, in the absence of a

congressionally-mandated private cause of action."  McCallister,

2001 WL 1141329, *5-6, and n.17 (S.D.W. Va. Sept. 27,

2001)(Haden, C.J.).  This court has determined that there is no

private cause of action under either of these Acts; thus,

defendants' arguments cannot stand.

D.  Primary Jurisdiction

      The Abbott defendants argue that the issue of whether the

primary jurisdiction principle applies in the instant case

provides a federal question sufficient to support federal

jurisdiction.  The primary jurisdiction doctrine was discussed in

Nader v. Allegheny Airlines, Inc., 426 U.S. 290 (1976), where the

Supreme Court stated that the doctrine is designed to

" 'promot[e] proper relationships between the courts and

administrative agencies charged with particular regulatory

duties.'"  Nader, 426 U.S. at 303 (quoting United States v.

Western Pacific R. Co., 352 U.S. 59, 63 (1956)).  Where a case

presents "technical questions of fact uniquely within the

expertise and experience of an agency," a court may refer the

issue to an appropriate agency.  Id. at 304.  If a court finds

16

that an administrative agency has primary jurisdiction over a
claim, the court stays the matter and directs the plaintiff to
file a complaint with the agency.  See Reiter v. Cooper, 507 U.S.
258, 268-69 (1993).

These defendants argue that this principle is "particularly
apt where the pending lawsuit seeks to challenge as inadequate or
misleading drug labeling set by the FDA after an extensive
regulatory process."  Abbott Defendants' Memorandum of Law in
Opposition to Plaintiff's Motion to Remand, p. 12.  The court
notes that this is not at all what plaintiff's lawsuit seeks to
challenge.  As noted previously, this lawsuit does not find fault
with any action of the FDA, including the labeling of OxyContin,
but rather challenges the defendants' marketing and promotion
strategies with regard to information about OxyContin.  The
complaint does not allege that the labeling of the product was
inaccurate.

Defendants rely primarily upon Bernhardt v. Pfizer, Inc.,
2000 WL 1738645, *2-3 (S.D.N.Y. Nov. 22, 2000), in which the
court held that the FDA had primary jurisdiction over the
question of whether the findings of a particular scientific study
warranted the dissemination of new warnings about the
effectiveness of Cardura (a prescription drug), different from
the warnings previously approved by the FDA.  As plaintiff notes,
because the determination in Bernhardt required analysis of

17

scientific and medical information, the court found it appropriate to refer that determination to the FDA.  Id. at *2.

In the instant case, plaintiff does not seek a change in the FDA-approved labeling for OxyContin, but seeks to have this information distributed to users of the drug through a court-administered fund.  There will be no need in the instant case for sifting through scientific evidence or making difficult scientific or medical determinations.  Unlike Bernhardt, the judgment of a technically expert body is not likely to be helpful in the instant case.  See National Communications Ass'n., Inc. v. American Tel. and Tel. Co., 46 F.3d 220, 223 (2d Cir. 1995).  The court finds the instant case distinguishable from Bernhardt, and finds no need for the application of the primary jurisdiction doctrine here.  Neither does this issue provide a federal question for the court to retain jurisdiction over this case.

E.   Federal Officer Jurisdiction

The Abbott defendants' final argument is that the State's claims are, in actuality, claims against persons acting under the direction of a federal officer.  An action against "any person . . . acting under [a federal] officer" may be removed to federal court.  28 U.S.C. § 1442(a).  Defendants argue that because the pharmaceutical industry is tightly regulated and closely supervised by the federal government, the defendants should be deemed by the court to be "acting under" federal officers for

removal purposes.   Defendants point to <u>Ryan v. Dow Chem. Co.</u>, 781 F. Supp. 934, 947 (E.D.N.Y. 1992), which they state stands for the proposition that "detailed regulations" are the equivalent of the direction of a federal officer.   However, the actual holding was that "the mere fact that a corporation participates in a regulated industry is insufficient to support removal absent a showing that the particular conduct being sued upon is closely linked to detailed and specific regulations."   <u>Ryan</u>, 781 F. Supp. at 947.   Defendants further point to several cases which they assert show that courts "have thus upheld removal of actions against many heavily regulated industries whose practices are closely supervised by the federal government."   Abbott Defendants' Memo in Opposition, p. 13.

The Eleventh Circuit recognizes a two-part test in determining whether section 1442(a) removal is proper in a given situation.   <u>See</u> <u>Magnin v. Teledyne Continental Motors</u>, 91 F.3d 1424, 1427 (11th Cir. 1996).   First, the defendant must rely upon a defense that arises out of its duty to enforce federal law; second, the defendant must establish a causal connection between its actions under asserted official authority and the claims against it.   <u>See</u> <u>id.</u>; <u>see also</u> <u>Pack v. AC and S, Inc.</u>, 838 F. Supp. 1099, 1101 (D. Md. 1993).   The court notes the holding of the <u>Brenizer</u> court, which dealt with this same argument, noting that "it is clear to the court that § 1442(a) has no application

to the present situation.  The court has failed to uncover any authority at all that stands for the proposition that a private company is permitted to remove any state court action against it solely by virtue of the fact that it participates in an industry that is heavily regulated."  Brenizer, slip op. at 21-22.  In fact, such a proposition would fly in the face of the principle that federal courts are courts of limited jurisdiction.

With regard to the cases cited by defendants, the court notes that Abbott apparently made the exact same argument and cited the exact same cases in the Brenizer case.  See Brenizer, slip op. at 21-22 ("Defendants cite a number of cases that they allege support the proposition that '[c]ourts have . . . upheld removal of actions against many heavily regulated industries whose practices are closely supervised by the federal government.'  However, a close reading of the five cases cited by the defendants reveals that there are a number of distinctions between those cases and the case at bar.").  The court agrees with the Brenizer court's analysis of those cases, and finds that they can also be distinguished from the instant case.  See Brenizer, slip op. at 22 (discussing cases).  Upon review of the record and the applicable case law, the court finds that

defendants have not carried their burden in demonstrating the propriety of removal under 28 U.S.C. § 1442(a).[3]

### III.   Conclusion

Accordingly, the court finds that this action was removed improvidently and without jurisdiction; plaintiff's motion to remand (doc. # 4) is GRANTED, and the court REMANDS this action to the Circuit Court of McDowell County, West Virginia. Plaintiff's motion for attorney fees is DENIED; it is apparent that defendants have removed all similar lawsuits against them in other states, relying on similar arguments, and the court, within its discretion, finds an award of attorney fees in this case unnecessary.

Plaintiff's motion for leave to file a memorandum in excess of twenty pages (doc. # 13) is GRANTED, pursuant to Local Rule of Civil Procedure 4.01.  Further, Abbott's motion to strike the notice to counsel of failure to answer within the appropriate time frame (doc. # 25), is GRANTED, for the reasons set forth in the motion, and which are known to the court.

---

[3] Plaintiff also argues that the original notice of removal did not include the concept of federal officer jurisdiction, and that defendants have not filed a motion to amend that notice. However, given the court's ruling on the merits of this claim, it is not necessary to address these arguments.

21

    The Clerk is directed to send certified copies of this Order to all counsel of record and to the Clerk of the Circuit Court of McDowell County, West Virginia.

    It is SO ORDERED this _14th_ day of March, 2002.


                ENTER:


                David A. Faber
                United States District Judge